UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------- X
MARK BLOUNT, *pro se*,

        Plaintiff,

   -against-

DAVID F. NAPOLI, SUPERINTENDENT OF
GREAT MEADOW CORRECTIONAL
FACILITY,

        Defendant.     X
---------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**

09-CV-4526 (KAM)

**MATSUMOTO, United States District Judge:**

     *Pro se* petitioner Mark Blount ("petitioner") seeks a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging
his conviction on four counts of Robbery in the First Degree,
one count of Attempted Robbery in the First Degree, and Criminal
Possession of a Weapon in the Second Degree, for which he was
sentenced to eighty years. Petitioner is currently incarcerated
pursuant to his sentence.

**FACTS**

**I.   Background Facts[1]**

     On January 17, 2004, at 1:00 a.m., petitioner was
sleeping at the home of a friend, Yodee, when petitioner's co-

---

[1] The following facts are derived from the evidence introduced at petitioner's
state court trial. "Trial Tr." refers to the transcript from the jury trial,
as submitted in Exhibit A to the Respondent's opposition papers, which are
divided into volumes ("Vol.") numbered 4 through 12. (*See* ECF No. 4,
Affirmation of Maria Park, Esq. in Opposition to Petition for Writ of Habeas
Corpus ("Park Affirm.") ¶ 17.) For brevity, only the page numbers of trial
transcript references are cited herein.

defendant, Antonio Farrell ("Farrell"), woke petitioner and told
him that Yodee and a Bloods gang member named "Black" wanted
petitioner to rob someone at a dance club. (Trial Tr. at 100,
644-45.) Petitioner obtained a gun from Yodee's house, and
petitioner and Farrell were driven by another acquaintance to
the club. (*Id*. at 644-45.) Petitioner testified that he spoke
directly with Black at the club, who told petitioner that if he
did not commit the robberies, Black would kill petitioner and
his family. (*Id*. at 648.) Petitioner and Farrell then waited
outside for Black's intended victim to exit the club. (*Id*. at
650.)

Around 4:00 a.m., when the victim did not appear,
petitioner received a message from Black to drive to the corner
of Fulton Street and Franklin Avenue in Brooklyn, New York. (*Id*.
at 650.) Once they arrived, Black called petitioner, asking him
to rob Ramel Henriques ("Henriques"), a man who had been at the
club earlier that night. (*Id*. at 650.) Petitioner and Farrell
approached Henriques, who was sitting in the rear seat of a
livery cab parked nearby. (*Id*. at 332-33.) Farrell opened the
rear passenger door, demanded Henriques' property, and shot
Henriques in the leg and groin two times as the cab drove away.
(*Id*. at 338-36, 378, 652.)

After the Henriques shooting, petitioner and Farrell
returned to the car they had driven to the club. (*Id*. at 100,

652-53.)  Petitioner, who was sitting in the passenger seat,
then received a call from Black instructing petitioner and
Farrell to go to the Galaxy Diner at 805 Pennsylvania Avenue,
Brooklyn.  (*Id*. at 73, 653-54.)  On direct examination,
petitioner testified that he did not think he would be asked to
rob the diner, but that they were just "going to get something
to eat."  (Trial Tr. at 654.)

An hour later, at approximately 5:00 a.m., petitioner
and Farrell arrived at the Galaxy Diner.  (*Id*. at 100.)  Prior
to exiting the car, petitioner and Farrell both spoke to Black
on the phone, and Black asked them to rob the diner.  (*Id*. at
656.)  Although petitioner initially refused to perform the
robbery, petitioner eventually agreed because he was "under the
impression Black was going to harm me and my family."  (*Id*. at
656-57, 702.)  On direct examination, petitioner explained that
he performed the robbery because "I ain't gonna let [Farrell] go
by [himself] because I don't want Black to do nothing to me."
(*Id*. at 657.)  Petitioner and Ferrell then entered the Galaxy
diner.  Petitioner was armed with a loaded nine-millimeter gun,
and Farrell was armed with two loaded firearms.  (*Id*. at 684,
702.)

After initially entering the diner, petitioner and
Farrell briefly walked out of the diner, returned to the car,
and spoke to Black on the cell phone again.  (*Id*. at 465, 657-

58.)  Petitioner told Black that there were too many people in the diner to perform a successful robbery.  (*Id*. at 657-58.)  Black responded that there was already someone inside the diner who would help with the robbery, and repeated his instruction to petitioner and Farrell to rob the diner.  (*Id*. at 658.)  Petitioner and Farrell then reentered the diner.  (*Id*.)  At that time, diner security guard Mike Kennedy ("Kennedy") asked petitioner and Farrell if they needed help, and walked outside the diner with petitioner and Ferrell.  (*Id*. at 464-65.)  Kennedy then stayed outside with Marcus Butler ("Butler"), another security guard, while petitioner and Farrell reentered the diner for a third time.  (*Id*. at 466-67.)

Upon reentering the diner for the third time, Farrell fired two shots in the air, and both Farrell and petitioner announced a robbery.  (*Id*. at 39-40, 467, 487-88, 658-659.)  Next, either Farrell or petitioner instructed people in the diner to put their money on the table.  (*Id*. at 224.)  Petitioner, holding his gun, ordered the person at the cash register to hand over the money.  (*Id*. at 703.)  The cashier fumbled with the key, and petitioner never accessed the money in the register.  (*Id*. at 43, 703.)

Former diner security guard Vernon Alexander ("Alexander") then ran toward the exit, and petitioner took his belongings and shot at him, grazing his leg.  (*Id*. at 47-48, 71,

441.)  Petitioner shot customer Jaytee Spurgeon ("Spurgeon") in
the rear, as Spurgeon was taking his jacket off.  (*Id.* at 441,
507.)  Spurgeon also put his money on a table and never saw his
money again.  (*Id.* at 507.)

According to petitioner's testimony, at some point
during the robbery, petitioner ran out of the diner and saw
Black.  (*Id.* at 659-60.)  Black shot at petitioner, sending a
bullet past petitioner's head.  Petitioner then ran back inside
the diner.  (*Id.* at 659-60.)

Meanwhile, Farrell, who did most of the shooting,
fired his guns at anyone who moved, including employee Juan
Teutle and customer Kawan Tyler, who were both shot in the head.
(*Id.* at 42-43, 146, 148, 186, 446, 469).  Farrell also hit
customer Matthew Daniels ("Daniels") in the head with the butt
of a gun and took his belongings.  (*Id.* at 444-46.)
Additionally, customers Melissa Boban and Patrick Mullings were
shot during the robbery in the torso and finger, respectively.
(*Id.* at 210, 231.)  By the end of the robbery, customer Clifton
Jordan ("Jordan") had also been shot in his finger and his money
had been taken.  (*Id.* at 489-90.)

After receiving a call from petitioner's cousin, on
January 20, 2004, police identified petitioner in connection
with the robbery and went to a residential building 966 Utica
Avenue, Brooklyn.  (*Id.* at 87, 283-84, 669.)  At the residential

building, police approached petitioner, who was drinking from an open container of alcohol, and asked for petitioner's identification.  (*Id*. at 284-85.)  After petitioner identified himself, police brought him into custody, where, after being provided with *Miranda* warnings, he provided a written statement admitting his participation in the livery cab and Galaxy diner robberies.  (*Id*. at 88, 99-101.)

## II.  The Trial

Petitioner was charged by Kings County Indictment Number 565/2004 with ten counts of Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00/125.25(1)); four counts of Robbery in the First Degree (N.Y. Penal Law §160.15(2)); ten counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10(1), (2)(a)); five counts of Robbery in the Third Degree (N.Y. Penal Law § 160.05); one count of Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00/160.15(2)); two counts of Attempted Robbery in the Second Degree (N.Y. Penal Law §§ 110.00/160.10(1), (2)(a)); one count of Attempted Robbery in the Third Degree (N.Y. Penal Law §§ 110.00/160.05); two counts of Assault in the First Degree (N.Y. Penal Law § 120.10(1)); nine counts of Assault in the Second Degree (N.Y. Penal Law § 120.05(2)); nine counts of Assault in the Third Degree (N.Y. Penal Law § 120.00(1)); five counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)); five

counts of Criminal Possession of a Weapon in the Third Degree
(N.Y. Penal Law § 265.02(4)); five counts of Criminal Possession
of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(1));
and Reckless Endangerment in the First Degree (N.Y. Penal Law
§ 120.25). (Park Affirm. ¶ 6.) Petitioner's jury trial was
held between October 18, 2004 and October 28, 2004, before
Justice Anne G. Feldman in the Kings County Supreme Court. (*See
generally* Trial Tr.)

### A. *Sandoval* Hearing

Prior to the commencement of the jury trial,
petitioner requested a *Sandoval* hearing, seeking to prevent the
prosecutor from impeaching him with his criminal record if he
testified. (ECF No. 4, Ex. A, Vol. 1, *Sandoval* Hearing
Transcript ("SH Tr."), at 92-94.) Specifically, petitioner
sought to prevent the prosecutor from referring to the fact that
in December 1995, petitioner pleaded guilty to Robbery in the
Second Degree, and served eight years in prison until October
2003, when he was released on parole. (SH Tr. at 92-94.)

At the *Sandoval* hearing held on October 13, 2004, the
prosecutor asked the court to permit her to ask petitioner about
his prior conviction and parole release date, if he testified at
trial. (*Id.* at 94-95.) In response, defense counsel asked the
court to limit the prosecutor's inquiry and prevent her from
bringing up the fact that petitioner had been released on parole

just three months before the incidents occurred.  (*Id.*)  Defense

counsel asserted that "the time frame of [petitioner] having

been out three months before being arrested on this case [was]

irrelevant," and asked the court not to allow the prosecutor to

raise the fact of petitioner's parole.  (*Id.* at 95.)  The court

ruled that the prosecutor could cross-examine petitioner

regarding both his past felony conviction and the release date.

(*Id.* at 96.)  The court reasoned:

> [I]f he is convicted in this case the fact
> that he'd just gotten out of . . . prison
> three months earlier will certainly be very
> influential in determining the appropriate
> sentence in this case . . . since he
> obviously is not living as a law-abiding
> citizen and has no intention of doing so.

(*Id.*)

### B.    Trial Testimony Regarding Petitioner's Duress Defense

Petitioner presented a duress defense at trial,

arguing that he committed the robberies only because he feared

that, otherwise, Black would kill him and his family.  (Trial Tr.

at 648-50.)  Petitioner also testified on direct examination

that he had taken a gun to the club (where he had been prior to

the livery car robbery), knowing that Black had asked him to rob

someone at the club, but before Black had made any threats.  (*Id.*

at 643-45.)  During cross-examination, however, petitioner

testified that he did *not* know he had been asked to commit a

robbery prior to arriving at the club. (*Id.* at 692.)
Petitioner also claimed that although he did not want to rob
anyone, he "had to appear he was doing something" because he
thought Black would kill him and his family. (*Id.* at 702.)  He
did not, however, tell the police or the assistant district
attorney that he felt coerced by Black to commit the robberies.
(*Id.* at 722-24.)  Additionally, on cross examination, petitioner
identified himself in a still photograph taken from the diner
surveillance video, which showed petitioner holding a gun in the
Galaxy diner during the robbery. (*Id.* at 704, 708-10.)

Moreover, defense counsel was the first to introduce
petitioner's 1995 conviction and October 2003 release date,
questioning petitioner as follows:

> Q: Now you got out of jail in October of
> 2003; is that correct?
>
> A: Yes.
>
> Q: Did you make any efforts to find work at
> that time?
>
> A: No, I haven't.
>
> Q: Why not?
>
> A: Because my parole officer told me to get
> in school.
>
> Q: And what efforts have you made to get in
> school?
>
> A: I went to a vocational trade in Manhattan
> and I signed up and they told me that the

first class would be starting in February
2004.

Q: That would put it at the point that you
got arrested in January of 2004?

A: Yes.

. . .

Q: How long have you known Yodee?

A: I knew him when we was younger before I
got locked up in 1995.

(*Id.* at 636-37, 639.)

### C. Summations

During summation, defense counsel referred to
petitioner's testimony that Black had shot at him as petitioner
tried to escape the diner, thus scaring him back inside. (*Id.*
at 762-63.) Defense counsel argued that Butler and Kennedy, the
two security guards who had been standing outside at the
beginning of the robbery, must have walked away from the diner
before Black had shot at petitioner, because neither of them
testified at trial. Specifically, defense counsel stated:

Now, those two individuals did not testify.
If they're outside, they should have seen
what took place. They should have . . . seen
the shot into the diner, should have seen
Black. . . . I think that what took place
is that after Mr. Kennedy and Mr. Butler
were outside, that they left and went
somewhere else.

(*Id.* at 763.)

During her summation, the prosecutor addressed defense counsel's comment regarding Kennedy and Butler's non-appearance at the trial as follows:

> If [Marcus Butler] was outside and [he] saw someone shooting, that [*sic*] you could bet he would be here. . . . Out of the 40 witnesses he would have been here, but that didn't happen. [The defendant is] working everything to fit it all in for his little duress defense.

(*Id.* at 810.) The prosecutor also referred to petitioner's prior conviction to discredit his duress defense, stating:

> We are dealing with a man who just spent eight years of his life in jail, out for three months, not even, when this crime is committed. . . . [I]s this a man of reasonable firmness that could have resisted any threats of coercion assuming that you believe there might even be one?

(*Id.* at 806.)

**D. The Verdict**

The jury convicted petitioner of four counts of Robbery in the First Degree (N.Y. Penal Law §160.15(2)), one count of Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00/160.15(2)), and one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)). (Trial Tr. at 907-09.) On December 7, 2004, petitioner was sentenced to four consecutive twenty-year prison terms for each of the robbery counts, to run concurrently with ten years each

for the attempted robbery and weapon possession counts. (ECF No. 4, Ex. A, Vol. 12, Sentencing Hearing Transcript, at 9-10.)

## III. Post-Trial Proceedings in State Court

### A. Direct Appeal

In February 2007, petitioner filed a brief in the Appellate Division, Second Department. (*See generally* ECF No. 4, Ex. B ("Def.-Appellant Br.").) On direct appeal, petitioner challenged (i) the trial court's *Sandoval* ruling, (ii) the prosecutor's summation, and (iii) the consecutive twenty-year prison sentences. (Def.-Appellant Br. at 31, 35, 39.)

Regarding the *Sandoval* ruling, petitioner argued that the prosecutor's impeachment using the facts of his prior conviction and parole release date was unduly prejudicial, and that his parole status and prior conviction were irrelevant to any issue in controversy at trial. (*Id*. at 31.) Petitioner also claimed that the prosecutor made herself an "unsworn witness" by commenting in her summation that if Black had shot at petitioner when he tried to escape the diner, Butler would have testified on the People's behalf. (*Id*. at 35.)

Petitioner further argued that his robbery sentences should not run consecutively with each other because the robbery was predicated on a single act and, thus, under New York Penal Law § 70.25(2), the robbery sentences must run concurrently. (*Id*. at 39.) Petitioner also maintained that the consecutive

sentences violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), in which the Supreme Court held that any fact that increases the penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. (*Id.* at 44.) Alternatively, petitioner argued that the Appellate Division should reduce his 80-year sentence because it was excessive. (*Id.* at 46.)

The New York Appellate Division affirmed petitioner's conviction in *People v. Blount*, 849 N.Y.S.2d 640 (App. Div. 2008). First, the Appellate Division held that the *Sandoval* ruling was "a provident exercise of the court's discretion." *Id.* at 641. Second, it held that petitioner's challenge to the prosecution's summation comments was procedurally barred under New York Criminal Procedure Law § 470.05(2) because defense counsel failed to object to the comments at trial. *Id.* The court also noted that the prosecutor's comments were either a "fair response to the [defense counsel's] summation or, if improper, did not deprive petitioner of a fair trial." *Id.* Third, the Appellate Division concluded that petitioner accomplished his four first degree robberies through "separate and distinct acts committed against four different individuals," and, thus, consecutive sentences were permitted, even though the robberies were part of a "single extended criminal transaction." *Id.* at 642. The New York Court of Appeals denied petitioner

leave to appeal the Appellate Division's decision.  *See People v. Blount*, 10 N.Y.3d 808 (N.Y. 2008).

### B. Petitioner's Motion to Vacate His Conviction under New York Criminal Procedure Law Section 440.10

On February 24, 2009, petitioner filed in New York Supreme Court a *pro se* motion to vacate the judgment of conviction against him pursuant to New York Criminal Procedure Law § 440.10, citing two grounds.  (*See generally* ECF No. 4, Ex. D ("Mot. to Vacate").)  First, he claimed that Justice Feldman, who presided over his trial, did not have jurisdiction to preside over his case because she had never been sworn in as a Justice of the Supreme Court.  (Mot. to Vacate at 4-6.)  Second, petitioner alleged that he was arrested under false pretenses. (*Id.* at 7-9.)

On May 12, 2009, the New York State Supreme Court denied petitioner's § 440.10 motion.  (*See generally* ECF No. 4, Ex. F, Justice Ingram's Decision and Order dated 5/12/09.)  The New York Supreme Court rejected petitioner's claim pertaining to Justice Feldman because documents established that in 1977 Justice Feldman had taken the requisite oath and signed the oath book.  (*Id.* at 2-3.)  The court further held that, under § 440.10(2)(c), petitioner was procedurally barred from raising a false arrest claim in his post-conviction motion because sufficient facts appeared on the record to have allowed

petitioner to raise the claim on direct appeal, but petitioner unjustifiably failed to do so. (*Id*. at 3.)

On September 10, 2009, the Appellate Division denied petitioner's application for leave to appeal the Supreme Court's decision on the motion to vacate. (*See generally* ECF No. 4, Ex. G, Justice Florio's Decision and Order dated 9/10/09.)

## IV. Habeas Corpus Proceedings in Federal Court

On October 9, 2009, petitioner filed the instant application seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* ECF No. 1, Petitioner's Petition for Writ of Habeas Corpus ("Pet.").[2]) Petitioner raises the same claims here regarding the *Sandoval* ruling, prosecutorial misconduct during summation, and consecutive sentencing that he raised on direct appeal to the Appellate Division, and also raises the same claims relating to Justice Feldman and false arrest that he raised in his § 440.10 Motion to Vacate before the New York Supreme Court. (Pet. at 6-8.) On December 10, 2009, the respondent submitted its brief in opposition to the habeas petition. (*See generally* ECF No. 4, Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp't Br.").)

---

[2] Because petitioner's Petition is not consecutively paginated, the court will refer to the page numbers imposed by the ECF filing system.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), established a deferential standard that federal courts must apply in reviewing state court decisions on habeas petitions. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the *habeas* petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In reviewing the petition, the Court is mindful that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *see also Williams v. Kullman*, 722

F.2d 1048 (2d Cir. 1983) (noting that habeas petitions filed *pro se* must be liberally construed).  Accordingly, the Court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## DISCUSSION

### I. Petitioner's *Sandoval* Claim

Petitioner argues that he was deprived of a fair trial when the trial court's *Sandoval* ruling permitted the prosecutor to elicit the fact that petitioner was released from prison on parole less than three months before the Galaxy diner and livery cab robberies.  (Pet. at 6.)  Respondent asserts that the *Sandoval* ruling is not cognizable on federal *habeas* review because the ruling did not deny petitioner a fundamentally fair trial.  (Resp't Br. at 6.)

### A.    Applicable Legal Standards

"Federal review of a state court conviction is limited to errors of constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial." *Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  Generally, however, "erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a

writ of habeas corpus may be issued." *Id.* (citing *Lipinski v. People of New York*, 557 F.2d 289, 292 (2d Cir. 1977)). Additionally, a trial court's *Sandoval* decision is treated as an evidentiary ruling. *Ayala v. Ercole*, 06-CV-1747, 2007 U.S. Dist. LEXIS 28341, at *43 (E.D.N.Y. Apr. 17, 2007); *Miller v. Portuondo*, 151 F. Supp. 2d 245, 247 (E.D.N.Y. 2001). Thus, erroneous *Sandoval* rulings do not usually provide grounds for granting a *habeas* petition unless the ruling denied the defendant a fair trial or violated "'fundamental conceptions of justice.'" *Gouvatsos v. Ercole*, No. 08-CV-2049, 2010 U.S. Dist. LEXIS 131985, at *41-42 (E.D.N.Y. Dec. 13, 2010) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)); *see also Ayala,* 2007 U.S. Dist. LEXIS 28341, at *38. Therefore, regardless of whether the trial judge erred in admitting evidence of the petitioner's prior conviction and imprisonment, petitioner's *Sandoval* claim is only cognizable under federal *habeas* review if the admission of the evidence denied petitioner a fundamentally fair trial.

In order for erroneously admitted evidence to have denied a defendant a fundamentally fair trial, the evidence must be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985); *see also Allan v. Conway*, No. 08-CV-4894, 2012 U.S. Dist.

LEXIS 2922, at *50 (E.D.N.Y. Jan. 10, 2012). The presence of
other "overwhelming evidence" of defendant's guilt at trial is a
factor that weighs against finding that erroneously admitted
evidence was sufficiently material to provide the basis for
conviction. *Allan*, 2012 U.S. Dist. LEXIS 2922, at *53.
Furthermore, the petitioner bears the "heavy burden" of proving
the erroneously admitted evidence was sufficiently material to
provide the basis for conviction. *Roldan v. Artuz*, 78 F. Supp.
2d 260, 276 (S.D.N.Y. 2000).

## B. Discussion

The trial court's admission of the *Sandoval* evidence –
*i.e.*, petitioner's prior convictions, prison term, and recent
parole date – did not deprive petitioner of a fundamentally fair
trial. Erroneously admitted *Sandoval* evidence[3] only denies a
defendant a fair trial if the evidence was "sufficiently
material to provide the basis for conviction." *Collins*, 755
F.2d at 19. Here, for the reasons discussed below, even
assuming the *Sandoval* evidence was erroneously admitted, the
evidence did not provide the basis for conviction, and, thus,
did not render petitioner's trial fundamentally unfair.

---

[3]As noted *infra* section II, there is no indication that the trial court's
admission of the *Sandoval* material was erroneous under New York law. To the
contrary, the New York Appellate Division has held that a prosecutor can
introduce evidence of a defendant's prior convictions to impeach the
defendant's testimony where, as here, the defendant raises a duress defense.

First, there was overwhelming evidence of petitioner's guilt at trial, even putting aside the *Sandoval* evidence. For example, a surveillance video showed petitioner holding a gun in the diner during the robbery, and petitioner even identified himself in a still photograph taken from the surveillance video during his cross examination. (Trial Tr. at 704, 751.) Petitioner testified that he accompanied his co-defendant Farrell into the diner and was there when Farrell opened fire on diners. (*Id*. at 657-59.) Petitioner also admitted to demanding money from the diner's cashier while holding a gun. (*Id*. at 659.) Additionally, two eyewitnesses testified to seeing petitioner fire his gun, and one eyewitness testified to seeing petitioner shoot two people in the diner. (*Id*. at 41, 441, 506-07.) Further, petitioner submitted a written statement while in police custody admitting to going to the club after he was asked to rob someone, accompanying his co-defendant during the livery cab assault and robbery, and accompanying his co-defendant into the Galaxy diner. (*Id*. at 99-101.)

As other courts in this district have observed, the existence of overwhelming evidence of petitioner's guilt weighs against a finding of fundamental unfairness. *See, e.g., Allan*, 2012 U.S. Dist. LEXIS 2922, at *52-53 (erroneously admitted hearsay evidence was not sufficiently material, in light of overwhelming evidence of petitioner's guilt). Thus, even

without the *Sandoval* material, the overwhelming evidence of petitioner's guilt elicited at trial weighs against a finding of fundamental unfairness.

Second, even if the court assumes that the trial judge's decision to admit the *Sandoval* evidence injured petitioner's credibility with respect to his duress defense, the *Sandoval* evidence was not "sufficiently material" to provide the basis for conviction because petitioner's testimony was insufficient to establish a successful duress defense even if it had been fully credited by the jury. *Collins*, 755 F.2d at 19.

Under New York law, a duress defense "is not available when a person intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress." N.Y. Penal Law § 40.00(2). Additionally, a duress defense will not succeed if the defendant has opportunities to escape and does not take them. *People v. Amato*, 470 N.Y.S.2d 441, 443 (App. Div. 1984). Moreover, although generally the threatened harm must be capable of immediate realization, *see People v. Moreno*, 871 N.Y.S.2d 126, 129 (App. Div. 2009), prior threats and assaults may support a claim of duress at the time of the crime only when combined with a present and immediate ability to act and a threat of harm is imminent, *People v. Staffieri*, 674 N.Y.S.2d 885, 886 (App. Div. 1998).

Here, petitioner testified on direct examination that he went to the dance club armed with a gun, knowing that Black had asked him to rob someone at the club. (Trial Tr. at 643-44.) When defense counsel asked why he had taken a gun to the club, petitioner responded, "because they told us to bring the guns to the club, that we was [*sic*] to rob somebody." (*Id*. at 644.) Therefore, according to petitioner's own testimony, petitioner went to the club with a gun *before* Black had made any threats. (*See id*. at 643-44.) Additionally, petitioner testified that, prior to leaving for the club, he knew Black was a member of the Bloods gang and a dangerous person who shot people and had participated in many robberies. (*Id*. at 641, 643.)

Under these circumstances, petitioner's duress defense was insufficient wholly apart from the *Sandoval* material because petitioner testified that he voluntarily went to the club after being asked by Black, a known dangerous person, to commit a robbery there, thereby recklessly placing himself in a situation in which he was likely to be subjected to duress. *See, e.g., People v. Campos*, 484 N.Y.S.2d 907, 908 (App. Div. 1985) (no duress defense where defendant voluntarily put himself in position to be subjected to duress). Further, petitioner had opportunities to escape from Black – for example, after petitioner and Farrell waited for the intended victim outside

the club for a few hours but did not find him, or after the Henriques shooting, when petitioner and Farrell were asked by Black via a cell phone call to rob the diner. Petitioner, however, did not avail himself of the multiple opportunities to escape. (*See* Trial Tr. at 332-33, 650, 656-57.) This is also fatal to a putative duress defense. *See Amato*, 470 N.Y.S.2d at 443 (duress defense was not established where defendant had opportunities to escape when left alone by his coercer).

Similarly, petitioner did not establish that Black's threat was capable of immediate realization, or that Black's prior threat to him was combined with any present immediate compulsion to carry it out at the time he and Farrell attacked Henriques, as would be required to constitute a duress defense based on prior threats. *See Moreno*, 871 N.Y.S.2d at 129; *Staffieri*, 674 N.Y.S.2d at 886 (duress defense unsuccessful where prior threats were not capable of being realized at the time defendant committed supposedly coerced crime). Regarding the Galaxy diner robbery, even if Black posed an immediate threat to petitioner by shooting at him when petitioner tried to escape the diner, petitioner had an opportunity to avoid putting himself under foreseeable immediate compulsion when Black first asked him via cell phone to rob the diner, because at that point in time petitioner was outside the diner and Black had not yet arrived. (Trial Tr. at 658.) *See Amato*, 470 N.Y.S.2d at 443.

Thus, petitioner's duress defense was insufficient in several independent respects under New York law, and, therefore, the *Sandoval* material can hardly be viewed as the pivotal reason why petitioner's duress claim failed. Consequently, the admission of the *Sandoval* material was not the basis of petitioner's conviction, and, thus, did not render the trial fundamentally unfair.

Moreover, petitioner's overall credibility was already placed in doubt with respect to the duress defense because of his own inconsistent testimony, notwithstanding the *Sandoval* material. Specifically, while petitioner testified during his direct examination that he had left for the club knowing that he was asked to commit a robbery, petitioner testified on cross-examination that he did not know he had been asked to commit a robbery prior to arriving at the club. (*Compare* Trial Tr. at 643-44 *with* 692.) Juries are entitled to discredit a defendant's self-serving statements regarding a duress defense that is otherwise against the weight of the evidence. *See People v. Hammond*, 922 N.Y.S.2d 706, 707 (App. Div. 2011). Petitioner's duress defense had credibility issues apart from any implications derived from the *Sandoval* material, and, hence, the *Sandoval* material cannot be deemed "sufficiently material" to have been the basis for petitioner's conviction. *Collins*, 755 F.2d at 19.

Therefore, for all the reasons discussed above, even if the trial court erroneously admitted evidence of petitioner's prior conviction, petitioner's *Sandoval* claim is not cognizable on federal habeas review because the ruling did not deprive petitioner of a fundamentally fair trial.

## II. Prosecutorial Misconduct Claim Based on the Prosecutor's Summation Comments Concerning Petitioner's Previous Conviction and Release Date

Petitioner contends that he was deprived of his due process right to a fair trial when the prosecutor mentioned in her summation that petitioner had spent eight years in prison and had only been released for less than three months before the livery cab and diner robberies. (Pet. at 6.) Respondent argues that the prosecutor's comments did not violate petitioner's due process right to a fair trial. (Resp't Br. at 16-18.) For the reasons discussed below, petitioner's prosecutorial misconduct claim based on these remarks must be denied because the prosecutor was permitted to make the challenged remarks under applicable New York law and because those remarks did not constitute substantial prejudice to the petitioner.

### A. Applicable Legal Standards

In order to assert a successful prosecutorial misconduct claim, the petitioner bears the "heavy burden" of showing that the alleged misconduct was "so severe and significant as to result in the denial of [his] right to a fair

trial." *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993). Specifically, petitioner must establish that the prosecutor's alleged misconduct resulted in "substantial prejudice." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d. Cir. 1990). The Second Circuit considers three factors in determining the existence of substantial prejudice: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Id.* (internal quotation marks omitted).

Additionally, courts in this district have held that a prosecutor's comments do not constitute prosecutorial misconduct where they merely discuss evidence that is "admissible for an appropriate purpose under state law." *Goines v. Walker*, No. 97-CV-3512, 2000 U.S. Dist. LEXIS 9798, at * 19-20 (E.D.N.Y. Jul. 12, 2000) (citing *Spencer v. Texas*, 385 U.S. 554, 560 (1967); *Bossett v. Walker*, 41 F.3d 825, 828-830 (2d Cir. 1994)); *see also Lombard v. Mazzuca*, No. 00 CV 7622, 2003 U.S. Dist. LEXIS 22085, at *36 (E.D.N.Y. Dec. 8, 2003) (holding that the fact that the prosecutor's remark is a "reasonable inference" based on properly admitted evidence is a factor that weighs against a finding of prosecutorial misconduct).

**B.   Discussion**

Petitioner's prosecutorial misconduct claim arising from the prosecutor's comments regarding petitioner's previous

conviction and incarceration fails because the prosecutor was permitted to make those comments under applicable New York law. Additionally, there are no record facts in this case indicating that the prosecutor's comments resulted in substantial prejudice to petitioner, as the relevant precedent requires.

The prosecutor's comments during summation concerning petitioner's recent parole date and prior conviction did not constitute misconduct because they merely made arguments based on evidence that was "admissible for an appropriate purpose under state law." *Goines*, 2000 U.S. Dist. LEXIS 9798, at *19-20. The New York Appellate Division has explicitly held that the prosecutor can introduce evidence of the defendant's prior convictions to impeach the defendant's testimony where, as here, the defendant raises a duress defense. *See People v. Stranton*, 685 N.Y.S.2d 250, 250 (App. Div. 1999); *People v. Rosado*, 666 N.Y.S.2d 227, 231 (App. Div. 1997). The rationale for allowing impeachment through this avenue is that, by virtue of introducing a duress defense, the defendant "place[s] his intent squarely in issue." *Rosado*, 666 N.Y.S.2d at 231. Therefore, evidence of prior convictions is relevant to establishing "a disposition to commit acts of a similar nature," in order to "rebut the implicit denial of criminal intent raised by [a duress] defense." *Id*.

In this case, petitioner raised a duress defense during his trial, thereby putting his intent squarely at issue. (Trial Tr. at 648-50, 657, 661, 702.) Under New York law, then, the evidence of petitioner's prior conviction and release date was relevant to establishing petitioner's disposition to commit similar acts at trial. *Rosado*, 666 N.Y.S.2d at 231. Thus, in light of petitioner's duress defense, the prosecutor's use of petitioner's prior conviction and parole status to impeach petitioner's testimony during her summation was proper under New York law. *See Stranton*, 685 N.Y.S.2d at 250 (admission of evidence regarding defendant's prior robbery conviction was proper in light of defendant's duress defense); *Rosado*, 666 N.Y.S.2d at 231 (trial court properly admitted evidence of a prior youthful offender adjudication for robbery to establish a criminal disposition because defendant "placed his intent squarely in issue" by arguing duress). Additionally, petitioner himself admitted during direct examination that he was "locked up" in 1995 and released in 2003 (Trial. Tr. at 636-37, 639), and thus, the prosecutor's remarks were legitimate inferences from properly admitted evidence and testimony presented by petitioner during his direct examination, which also weighs against a finding of prosecutorial misconduct. *See Lombard*, 2003 U.S. Dist. LEXIS 22085, at *36; *Goines*, 2000 U.S. Dist. LEXIS 9798, at *19-20.

Furthermore, even if the court assumed, *arguendo*, that the prosecutor's comments regarding petitioner's previous conviction and parole date did constitute misconduct, the court would still have to evaluate the degree of certainty with which petitioner would have been convicted in the absence of the challenged remarks to determine if the challenged remarks were substantially prejudicial. *See Floyd*, 907 F.2d at 355. Here, it appears certain that the jury would have convicted petitioner notwithstanding the prosecutor's remarks. This is because, as discussed *supra* Section I.B, (i) there was overwhelming evidence of petitioner's guilt at trial; (ii) petitioner's inconsistent testimony undermined his own credibility; and (iii) petitioner's testimony was insufficient to establish a successful duress defense, even if it had been fully credited by the jury. Under these circumstances, there is no basis to conclude that the prosecutor's comments during summation substantially prejudiced the petitioner. Petitioner's misconduct claim based on the prosecutor's remarks concerning his prior conviction and parole date must also be denied because the prosecutor's remarks did not result in "'substantial prejudice'" that violated petitioner's due process. *Floyd*, 907 F.2d at 355.

### III. Petitioner's Prosecutorial Misconduct Claim Based on the Summation Comments Regarding Butler and False Arrest Claim.

Respondent argues that two of petitioner's claims – his prosecutorial misconduct claim based on the prosecutor's summation comments concerning Marcus Butler and his false arrest claim – are procedurally barred from federal habeas review because they were denied by state courts on "independent and adequate" state grounds. (Resp't Br. at 14, 26.) These two claims are thus addressed together, as follows.

#### A. Applicable Legal Standards

The Supreme Court has held that federal habeas review of a state prisoner's claim is prohibited if a state court judgment denying the claim is based on an "independent and adequate state law ground." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). This rule applies whether the independent state law ground is substantive or procedural. *Garvey*, 485 F.3d at 713.

A state court judgment is "independent" if it rests on grounds independent of the merits of a federal claim. *Harris v. Reed*, 489 U.S. 255, 260 (1989). Moreover, a procedural default in state court qualifies as an independent ground, regardless of whether the state court addresses the merits of the petitioner's claim in the alternative. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

A state court judgment is only "adequate" to foreclose federal *habeas* review if the state law ground is "'firmly established and regularly followed.'" *Garvey*, 485 F.3d at 713. In certain "limited circumstances," however, even firmly established and regularly followed state rules will not satisfy the adequacy requirement if application of the rule in a particular case was "'exorbitant.'" *Id*. at 713-14 (quoting *Lee*, 534 U.S. at 376). In order to evaluate whether the state court's application of a rule was exorbitant, courts consider the three factors set forth in the Supreme Court's decision in *Lee v. Kemna*:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 381-83).

Alternatively, a claim that has been denied review in state court due to a procedural default could be considered on federal habeas review upon a showing of (1) cause for the

default and (2) prejudice. *See Coleman v. Thompson*, 501 U.S.
722, 750 (1991), *superseded by statute on other grounds*, 28
U.S.C. § 2254(b)(2); *Richardson v. Superintendent of Mid-Orange
Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010). To
establish cause for the default, a petitioner may show "'that
the factual or legal basis for a claim was not reasonably
available to counsel,'" or that "'interference by officials . . .
made compliance impracticable.'" *Logan v. Ercole*, No. 08-CV-407,
2008 U.S. Dist. LEXIS 40518, at *9 (E.D.N.Y. May 20, 2008)
(quoting *Coleman*, 501 U.S. at 753). To satisfy the prejudice
requirement, the alleged error must have worked to the
petitioner's "actual and substantial disadvantage, infecting his
entire trial with error of constitutional dimensions." *Torres v.
Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation
marks omitted).

A habeas petitioner may also circumvent the
independent-and-adequate bar even if he fails to show cause for
a procedural default and prejudice from the alleged error, if he
can "demonstrat[e] a constitutional violation that resulted in a
fundamental miscarriage of justice, *i.e.*, that he is actually
innocent of the crime for which he has been convicted." *Dunham
v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v.
Delo*, 513 U.S. 298, 321 (1995)). In order to meet the "actual
innocence" requirement of this test, the petitioner must

"support his allegations of constitutional error with new reliable evidence." *Schlup,* 513 U.S. 298 at 327.

### A. Prosecutorial Misconduct Claim Based on the Prosecutor's Summation Comments Concerning Marcus Butler

Petitioner contends that he was deprived of a fair trial when the prosecutor remarked in her summation that if Marcus Butler had seen Black shoot at petitioner, Butler would have been called to testify. (Pet. at 6.) Respondent argues that petitioner's claim is procedurally barred from federal *habeas* review because the Appellate Division denied petitioner's claim on an "independent and adequate" state ground. (Resp't Br. at 14.) For the reasons discussed below, petitioner's misconduct claim based on the prosecutor's summation comments about Marcus Butler is precluded by the independent-and-adequate state law procedural bar, and he has not established any of the circumstances necessary to justify overcoming it.

### 1. Discussion

Petitioner's prosecutorial misconduct claim based on the prosecutor's summation comments regarding Marcus Butler is procedurally barred from federal habeas review. This claim was originally denied by the Appellate Division because petitioner had failed to object to the remarks at trial and thus had failed to preserve the claim for appellate review under New York Criminal Procedure Law § 470.05(2), which qualifies as an

"independent" state ground under applicable Second Circuit precedent. *See Garvey*, 485 F.3d at 720; *Velasquez,* 898 F.2d at 9. The Appellate Division's denial of petitioner's claim was also adequate because it is a "firmly established and regularly followed" state law ground that was not applied exorbitantly. *Garvey*, 485 F.3d at 713. Finally, petitioner cannot overcome the independent-and-adequate procedural bar because he has not shown cause or prejudice for his failure to object to the prosecutor's summation at trial, and he has not submitted new evidence to prove his actual innocence. *See Coleman*, 501 U.S. at 750.

The Appellate Division's decision regarding petitioner's prosecutorial misconduct claim was independent because it rested on state law grounds separate from the merits of any federal claim. The relevant state law ground is New York Criminal Procedure Law § 470.05(2), which requires a defendant to "[make] his position with respect to the ruling or instruction known to the court" in time for the trial court to correct the error in order to preserve an issue for appellate review. *Garvey*, 485 F.3d at 715-16 (construing N.Y. Crim. Proc. Law § 470.05(2)). In the case *sub judice*, the Appellate Division applied § 470.05(2) and held that petitioner's misconduct claim regarding the prosecutor's comments about Butler was "unpreserved for appellate review" because defense

counsel failed to object to them at trial. *People v. Blount*, 849 N.Y.S.2d at 641. Thus, under *Garvey*, the Appellate Division's application of § 470.05(2) to resolve this prosecutorial misconduct claim is deemed "independent" of the merits of a federal claim. *See Garvey*, 485 F.3d at 720.[4]

Second, the Appellate Division's denial of petitioner's prosecutorial misconduct claim under § 470.05(2) was adequate to foreclose federal habeas review because § 470.05(2), as applied in petitioner's case, is "firmly established and regularly followed." *See Garvey*, 485 F.3d at 715-16. The Second Circuit has held that § 470.05(2) is a "firmly established and regularly followed" state law ground when it is used to enforce the requirement "that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error." *Id.* Here, petitioner failed to object to the prosecutor's comments about Butler before the trial court, and, hence, he did not give the trial court a fair opportunity to consider the legal issue of whether the prosecutor's comments were improper, let alone to rectify any error. *See Garvey,* 485 F.3d at 715-16 (affirming state court's ruling regarding

---

[4] Although the Appellate Division also mentioned that the prosecutor's comments during summation were a fair response to the defendant's summation and did not deny petitioner a fair trial, the court's discussion of the merits does not preclude the fact that petitioner's claim was decided on an "independent" state procedural default. *See Blount*, 849 N.Y.S.2d at 641; *Velasquez,* 898 F.2d at 9.

procedural default based on § 470.05(2) where the petitioner's motion at trial to suppress evidence lacked specific grounds, thus preventing trial court from fair opportunity to rectify error). The Appellate Division's dismissal of petitioner's claim under § 470.05(2) was, thus, in accord with the "firmly established and regularly followed" application of § 470.05(2) in New York state courts. Therefore, the Appellate Division's ruling on this claim is "adequate" to foreclose federal *habeas* review. *See Garvey*, 485 F.3d at 720.

Moreover, there is no basis to conclude that the Appellate Division's application of § 470.05(2) in this case was exorbitant. *See Garvey*, 485 F.3d at 713-14 (even "firmly established and regularly followed" state rules will not satisfy the adequacy requirement if application of the rule in a particular case was exorbitant). As noted above, courts consider the three factors set forth by the Supreme Court in *Lee* to evaluate whether a state court's application of a rule was exorbitant in a particular case.

The first *Lee* factor concerns "whether the alleged procedural violation was actually relied on in the trial court," and "whether perfect compliance with the state rule would have changed the trial court's decision." *Cotto*, 331 F.3d at 240. Where, however, as here, the alleged procedural violation is a failure to raise an issue at trial, the Second Circuit has found

it "meaningless" to ask whether that failure can be a procedural violation that is "actually relied on" in court, because the alleged violation only occurred when a defendant raised the issue on appeal for the first time. *Garvey*, 485 F.3d at 719. Thus, in this case, as in *Garvey*, the trial court could not have relied on petitioner's alleged procedural violation, because the violation was not presented until petitioner's direct appeal. Additionally, perfect compliance with § 470.05(2) would have affected the trial court's decision in this case, because the court would at least have had a chance to consider petitioner's latent objection to the prosecutor's comments regarding Butler. Therefore, the first *Lee* factor weighs against a finding of exorbitance in this case. *See Garvey*, 485 F.3d at 719 (finding perfect compliance with § 470.05(2) would have affected trial court's decision because it would have had an opportunity to consider suppression issue had petitioner raised it at trial, and, therefore, that first *Lee* factor weighed against exorbitance).

The second factor to consider under *Lee* is whether "state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240. Where there was "no sudden or unanticipated event" that prevented a defendant from complying with § 470.05(2), the Second Circuit has ruled that this second *Lee* factor weighs

against a finding of exorbitance. *Garvey*, 485 F.3d at 719. In this case, petitioner has alleged no "sudden or unanticipated event" that prevented petitioner or his counsel from making the objection at trial. (*See* Pet. at 6-8.) Consequently, the second *Lee* factor weighs against petitioner as well.

The final *Lee* factor concerns whether petitioner "'substantially complied' with the rule in question given 'the realities of trial,' and therefore whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto*, 331 F.3d at 240. In *Garvey*, the Second Circuit held that the defendant's failure to raise an issue at trial "violated the very substance" of § 470.05(2) because the defendant did not give the trial court "a fair opportunity to rule on an issue of law before it can be raised on appeal." 485 F.3d at 720. Demanding compliance with § 470.05(2) was thus held to serve the legitimate government interest of "allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." *Id*. Here, likewise, in failing to give the trial court a fair opportunity to consider the objection, petitioner did not substantially comply with § 470.05(2), which serves the legitimate government interest of allowing the trial court to have the first opportunity to rule on and rectify any alleged legal error.

Thus, the third *Lee* factor also weighs against a finding of exorbitance in this case.

The Appellate Division's denial of petitioner's claim is, therefore, foreclosed from federal review by the independent-and-adequate state ground bar. Moreover, as discussed below, petitioner fares no better under the two alternative routes for overcoming the bar recognized in this Circuit.

With respect to the first of these routes, a claim that has been denied review in state court due to a procedural default could be considered on federal habeas review upon a showing of (1) cause for the default and (2) prejudice. *Richardson*, 621 F.3d at 201-02. Cause for the procedural default must be based on newly discovered legal or factual claims, and the prejudice must be severe enough to infect petitioner's entire trial with "error of constitutional dimensions." *Torres*, 316 F.3d at 152 (internal quotation marks omitted). Here, petitioner has shown neither cause for the procedural default nor that the prosecutor's comments were prejudicial. Regarding cause, petitioner provides no explanation at all for defense counsel's failure to object.[5]

---

[5] Any ineffective assistance of counsel argument raised by petitioner in connection with this claim would be unsuccessful because petitioner failed to raise it on direct appeal. *See Reyes v. Keane*, 118 F.3d 136, 139-40 (2d Cir. 1997). In *Reyes*, the Second Circuit held that an ineffective assistance of counsel claim is procedurally barred from federal *habeas* review if it was

(Pet. at 6-8.)  Additionally, the prosecutor's summation
comments concerning Butler did not prejudice petitioner so as to
infect the trial with error of constitutional dimensions – given
that petitioner's own attorney first opined that Kennedy and
Butler were *not* present outside of the diner at the time
defendant allegedly ran outside and was shot at by Black, the
prosecutor's contested statements could actually be construed as
consistent with the defendant's own theory.  (*See* Trial Tr. at
763, 810.)  In any event, petitioner's duress defense was not
significantly weakened by the prosecutor's comments about Butler,
as discussed *supra* Section I.B.  Thus, it is doubtful that the
prosecutor's comments caused "actual and substantial
disadvantage, infecting [the] entire trial with error of
constitutional dimensions" so as to overcome the independent-
and-adequate state ground procedural bar.  *Torres*, 316 F.3d at
152 (internal quotation marks omitted).

     With respect to the second potential means for
overcoming the procedural bar, petitioner cannot cure his
failure to show cause and prejudice because he has not
established "a constitutional violation that resulted in a
fundamental miscarriage of justice, *i.e.*, that he is actually

---

brought for the first time in a *habeas* petition as "cause" for another
procedural default.  *Id*. at 139-40.  Under *Reyes*, petitioner would not be
able to raise on federal *habeas* an ineffective assistance of counsel as the
reason for why objections were not made at trial to the prosecutor's
summation comments regarding Butler.

innocent of the crime for which he has been convicted." *Dunham*, 313 F.3d at 730. Here, as noted previously, there was overwhelming evidence of petitioner's guilt presented at trial. *See supra* Section I.B. Petitioner has not provided any basis for finding a fundamental miscarriage of justice, nor has he submitted new evidence proving his actual innocence. (*See* Pet. at 6-8.) Thus, petitioner cannot overcome the independent and adequate state ground bar through this method either. *See, e.g., Burgos-Santos v. Greene,* No. 05 Civ. 3736, 2009 U.S. Dist. LEXIS 55879, at *5-6 (S.D.N.Y. July 1, 2009) (finding that the petitioner had not presented any new, reliable evidence or otherwise established his factual innocence).

In sum, the Appellate Division denied the claim on an adequate and independent state ground based on a state law rule that was not exorbitantly applied, and petitioner has shown neither cause nor prejudice to overcome the procedural default. The court is therefore foreclosed from reviewing petitioner's prosecutorial misconduct claim based on the prosecutor's summation comments regarding Butler.

### C. Petitioner's False Arrest Claim

Petitioner also argues that he was arrested under false pretenses. (Pet. at 8.) Respondent asserts that petitioner's challenge to his arrest is procedurally barred because the New York Supreme Court denied this claim under New

York Criminal Procedure Law § 440.10(2)(c) as procedurally

defaulted. (Resp't Br. at 26.) For the reasons set forth below,

petitioner's false arrest claim is also precluded by the

independent-and-adequate state ground bar.

## 1. Discussion

Petitioner's false arrest claim is barred from federal

habeas review because the New York Supreme Court denied this

claim on an independent and adequate state law ground.

Specifically, the New York Supreme Court ruled that, pursuant to

§ 440.10(2)(c), petitioner's false arrest claim was procedurally

barred because petitioner unjustifiably failed to raise it on

direct appeal. (ECF No. 4, Ex. F, Justice Ingram's Decision and

Order dated 5/12/09 at 3.) The Second Circuit has held that a

state court's refusal to review a claim based on § 440.10(2)(c)

is a procedural default, which qualifies as a judgment on an

"independent" state ground, *Sweet v. Bennett*, 353 F.3d 135, 141

(2d Cir. 2003), and is considered to be an "adequate" and

"firmly established and regularly followed" state procedural

rule, *Clark v. Perez*, 510 F.3d 382, 391, 393 (2d Cir. 2008).

Petitioner's false arrest claim is thus procedurally barred.

Under these circumstances, the court considers whether the state

court's application of § 440.10(2)(c) to the false arrest claim

was exorbitant under the *Lee* factors so as to fall short of the

adequacy requirement.

As the Second Circuit observed in *Clark*, only the
second *Lee* factor ("whether state caselaw indicated that
compliance with the rule was demanded in the specific
circumstances presented," *Cotto*, 331 F.3d at 240) is "germane to
a state court's denial of collateral review on the basis that a
petitioner failed to file any direct appeal whatsoever." *Clark*,
510 F.3d at 391.  In *Clark*, the circuit court determined that a
state court's finding of procedural default pursuant to
§ 440.10(2)(c) was not exorbitant under the second *Lee* factor,
because the petitioner's claim was based on facts available in
the trial record and petitioner did not aver that he
misunderstood his right to appeal or that legal advisors were
unavailable to him.  *Id*. at 390, 392.  In this case, as in *Clark*,
petitioner did not argue that he misunderstood his right to
appeal, that legal advisors were unavailable to him, or that the
facts of his arrest were unavailable at the time of his trial.
(*See* Pet. at 8.)  Accordingly, the New York Supreme Court's
refusal to review petitioner's false arrest claim was not an
"exorbitant" application of § 440.10(2)(c) under the only
relevant *Lee* factor.  *See Clark*, 510 F.3d at 392.

The court next considers whether petitioner has
demonstrated grounds for overcoming the procedural bar by
establishing (1) cause for his failure to raise the false arrest
claim on direct appeal and prejudice to his trial therefrom; or

(2) a fundamental miscarriage of justice, based on new and

reliable evidence of his actual innocence. *See Cotto*, 331 F.3d

at 240; *Coleman*, 501 U.S. at 749-50; *Dunham*, 313 F.3d at 730;

*Burgos-Santos,* 2009 U.S. Dist. LEXIS 55879, at *5-6.

Here, petitioner has not alleged facts to support an

inference of cause for his failure to raise his false arrest

claim on direct appeal[6] and prejudice resulting therefrom. (*See*

Pet. at 6-8). Petitioner cannot, therefore, overcome the

procedural bar through this route. *See Richardson*, 621 F.3d at

201-02 (holding that petitioner's challenge of a station-house

identification was procedurally barred from habeas review where

petitioner failed to show cause for his default and prejudice

from the identification).

Additionally, petitioner's trial did not result in the

kind of "fundamental miscarriage of justice" that would be

required to overcome the procedural bar by the second

alternative means. Again, there was more than ample evidence

presented at trial establishing petitioner's guilt. (*See supra*

Section I.B.) Moreover, petitioner has not submitted new and

reliable evidence of his actual innocence that would indicate a

---

[6] As with petitioner's misconduct claim based on the prosecutor's summation
comments about Marcus Butler, petitioner would not now be permitted to cite
ineffective legal assistance as the "cause" for his failure to raise the
false arrest claim on direct appeal. *See Reyes*, 118 F.3d 136, 139-40
(holding that ineffective assistance of counsel claim was procedurally barred
from federal *habeas* review when brought for the first time in a habeas
petition as "cause" for another procedural default).

miscarriage of justice. (*See* Pet. at 6-8.) Consequently, there is no basis to set aside the procedural bar on "fundamental miscarriage of justice" grounds resulting from the jury's guilty verdict. *See Dunham*, 313 F.3d at 730; *Burgos-Santos,* 2009 U.S. Dist. LEXIS 55879, at *5-6. Therefore, the court's review of petitioner's false arrest claim is prohibited because the New York Supreme Court denied the claim on an independent and adequate state ground, and because petitioner has not satisfied any of the requirements for overcoming the procedural default.[7]

## IV. Petitioner's Concurrent Sentencing Claim

Petitioner also argues that his consecutive robbery sentences for the crimes committed inside the Galaxy Diner must be modified to run concurrently because the Galaxy Diner robbery was predicated on a single act, not on separate and distinct

---

[7] Substantive review of petitioner's false arrest claim is further foreclosed by the Second Circuit's decision in *United States ex rel. Pella v. Reid*, 527 F.2d 380 (2d Cir. 1975), which is still controlling law in this Circuit, albeit infrequently applied. In *Pella v. Reid*, the Second Circuit refused to grant habeas relief based on false arrest even where there was no probable cause for the arrest, holding that "after a defendant has been indicted and convicted, an illegal arrest, without more, is ordinarily insufficient to sustain a federal writ of habeas corpus." 527 F.2d at 382. Some of our sister courts have reached the same result, declining to address these types of claims where the petitioner has already been afforded a full and fair opportunity to present them. *See, e.g., Ford v. Hood*, No. 85 Civ. 6088, 1989 U.S. Dist. LEXIS 10011, at *7 (S.D.N.Y. Aug. 24, 1989) (relying on *Pella* and declining to address false arrest claim on habeas review where there was no evidence that "state deprived [petitioner] of a full and fair opportunity to present that claim"); *Brathwaite v. Jones*, No. 84-CV-4733, 1987 WL 6223 at *3 (E.D.N.Y. Jan. 9, 1987) (same). In this case, petitioner has not alleged that the state deprived him of a full and fair opportunity to present his false arrest claim (*see* Pet. at 8), and petitioner did previously raise this issue before the New York Supreme Court. Thus, regardless of whether the police had probable cause to arrest petitioner, petitioner's false arrest claim is not cognizable on federal habeas review given that he has now been indicted and convicted and was already afforded a full and fair opportunity to present the claim. *See Pella*, 527 F.2d at 382.

acts. (Pet. at 7.) Respondent asserts that petitioner fails to raise a federal question for review because the consecutive sentencing was within the range prescribed by state law. (Resp't Br. at 20-21.) As explained below, petitioner's sentencing claim cannot be granted because the imposition of consecutive sentences was permitted by state law, and, hence, there is no federal constitutional issue presented.

### A. Applicable Legal Standards

The Second Circuit has held with respect to habeas sentencing claims that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). Accordingly, "[i]ssues regarding sentencing under state statutes are not federal claims, and thus are not cognizable under federal habeas review." *Freeman v. Burge*, 05-CV-1585, 2009 U.S. Dist. LEXIS 45854, at *50-52 (E.D.N.Y. May 22, 2009) (internal citations omitted) (denying petitioner's challenge to imposition of consecutive sentences). Specifically, "[w]hether the sentence could be consecutive [is] a matter of state law and raises no Constitutional issue." *Davis v. Herbert*, 02-CV-4908, 2003 U.S. Dist. LEXIS 24121, at *45 (E.D.N.Y. Nov. 13, 2003). Therefore, the only sentencing issue cognizable on federal habeas review is whether the petitioner's consecutive sentences were within the sentencing

range prescribed by New York state law. *See, e.g., Moreno v. Smith*, 06-CV-4602, 2010 U.S. Dist. LEXIS 75476, at *42 (E.D.N.Y. July 26, 2010) (holding that petitioner's consecutive sentencing claim was not cognizable under federal habeas review where petitioner's sentence for each count fell within New York's sentencing range).

Under New York law, a court may sentence a defendant convicted of Robbery in the First Degree (a class B felony) to a maximum term of imprisonment of 25 years. N.Y. Pen. Law § 70.00(2)(b). Sentences for multiple offenses must run concurrently when they are "committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other." N.Y. Pen. Law § 70.25(2). When the offenses were accomplished by separate and distinct acts, however, the sentencing court has the discretion to impose consecutive sentences. *People v. Laureano*, 87 N.Y.2d 640, 643 (N.Y. 1996) (construing N.Y. Penal Law § 70.25(2)); *see also People v. Brathwaite*, 63 N.Y.2d 839, 843 (N.Y. 1984) (affirming consecutive sentences for two counts of felony murder, because "although the two deaths may be said to have occurred in the course of a single extended transaction -- the robbery -- it was separate 'acts' which caused the deaths of the owner and the clerk (*i.e.*, there is no contention that it was the firing of

the same shot that killed both the owner and the clerk)," and neither was a material element of the other).

New York courts have thus imposed consecutive sentences for robberies of separate victims that were accomplished by "separate and distinct acts," even when the robberies are committed "'in the course of a single extended transaction.'" *People v. Ramirez*, 89 N.Y.2d 444, 451-52, 457 (N.Y. 1996) (key to determining if consecutive sentences are proper is whether defendant committed "separate and distinct" acts in robbing separate victims); *see People v. Yong Yun Lee*, 92 N.Y.2d 987, 988-89 (N.Y. 1998); *People v. Stewartson*, IND No. 2979/99, 2009 N.Y. Misc. LEXIS 6395, at *1-2, *7 (N.Y. Sup. Ct., Nov. 24, 2009); *see also Oyague v. Artuz*, 393 F.3d 99, 105 (2d Cir. 2004) ("Numerous Appellate Division decisions have . . . upheld consecutive sentences for robberies of separate victims 'within a single extended transaction.'") (citations omitted).

### B.  Discussion

As noted above, the only issue to decide with respect to petitioner's sentencing claim is whether the imposition of consecutive robbery sentences for the robberies committed at the Galaxy Diner is within the range of sentences permitted by New York state law. *See White*, 969 F.2d at 1383; *Moreno*, 2010 U.S. Dist. LEXIS 75476, at *42. That inquiry turns on whether the

four robberies were accomplished by separate and distinct acts.
*See* N.Y. Pen. Law § 70.25(2); *Ramirez*, 89 N.Y.2d at 452-55.

Although the four robbery victims (Alexander, Daniels,
Jordan, and Spurgeon) were present during what the petitioner
argues was a "single extended transaction" at the Galaxy Diner,
there is no real doubt that petitioner and his accomplice
engaged in separate acts to accomplish the respective robberies.
For instance, there is no contention that the firing of the same
gunshot was used to deprive two victims of their property, and
there is no allegation that an act comprising any one robbery
"was a material element of the other." *Brathwaite*, 63 N.Y.2d at
843.

Indeed, the trial testimony demonstrates that each of
the four robbery victims was subject to distinct acts of
violence: (1) Alexander was shot and robbed as he ran for the
door; (2) Spurgeon was shot as he took off his jacket and was
robbed of the money he placed on a table; (3) Jordan was shot in
the finger and also deprived of his money; and (4) Daniels was
pistol-whipped and robbed by petitioner. (Trial Tr. at 43, 47,
71, 441, 444-46, 489-90, 507.) Under these circumstances, the
trial court's imposition of consecutive sentences for the four
robberies was within the range of permitted sentences under New
York law. *See, e.g., Yong Yun Lee*, 92 N.Y.2d at 988-89
(upholding consecutive robbery sentences where defendant robbed

a doctor and his wife in the doctor's office); *Ramirez*, 89 N.Y.2d at 451-53 (upholding consecutive robbery sentences where the defendant forcibly took the belongings of two security guards in a hotel parking lot); *People v. Stewartson*, 2009 N.Y. Misc. LEXIS 6395808, at *1-2, *7 (upholding consecutive robbery sentences where defendant robbed two people in the same apartment at the same time); *Oyague*, 393 F.3d at 105 (upholding consecutive sentences where petitioner forcibly took money from two separate bank tellers).  Therefore, petitioner's consecutive sentencing claim does not raise a federal constitutional question that is properly addressed by this court on habeas review.

## V.  Petitioner's Claim That Trial Judge Lacked Jurisdiction Over the Trial

Petitioner's final ground for habeas relief is his assertion that the trial judge did not have jurisdiction to preside over his trial because she had not been sworn in as a justice of the Supreme Court as required by New York state law. (Pet. at 7-8.)  The respondent, however, has submitted the affidavit of Eric M. Kornblau, Counsel to the Kings County Clerk's Office, verifying that Justice Feldman took an oath of office and signed the oath book in 1977.  (ECF No. 4, Ex. E, Ex. 1, Affidavit of Eric M. Kornblau, Esq., at 4.)  Thus, petitioner's claim is meritless.

## Conclusion

For the foregoing reasons, the application for writ of habeas corpus is denied in its entirety. The petition is dismissed. Respondent shall serve *pro se* petitioner with a copy of this Memorandum and Order and file a declaration of service via ECF by October 9, 2012.


**SO ORDERED.**

Dated:   October 5, 2012
         Brooklyn, New York

                                        _____/s/_____  _____
                                        **Kiyo A. Matsumoto**
                                        United States District Judge